Mr. Kyrgios, Mr. Kyrgios. Your honors, and may it please the court, Sharif Kyrgios for the appellate Marvin Carter. Mr. Carter is five years into a nine-year sentence that would be cut down to six if he prevailed. He hasn't gotten a hearing because his state appeal has languished for almost as long, and it's still in phase one of two. It's clear that he's exempt from having to exhaust that state process because the delay in it has been inordinate, as the district court held, and it's unjustifiable because it's attributable to state counsel and an overloaded public The district court's novel demand that Mr. Carter first exhaust his attempt to exhaust by writing letters to the state court has no support anywhere, as the district court all but admitted, and there's no jurisdictional obstacle to your so-holding, as there wasn't for the 46 years in which you did hear these appeals, for two independent reasons, one of which this court has never passed on, the other of which has been accepted by nine courts of appeals and rejected by this one only in a non-precedential opinion. Let me start with that second basis, the collateral order doctrine. I must say, counsel, I am not impressed with either of these arguments because the case seems to be over in the district court. The district court has said, we're done here, thank you very much, back to state court you go. So why aren't you arguing that this is appealable under 1291 as a final decision? I don't see how the terminating order in a case could ever be a collateral order. It just is incomprehensible, but I can easily see how this is a final decision. Well, your honor, we certainly wouldn't object to your so-holding. The reason that we are arguing that it's a collateral order for Moses H. Cohn is that the court expressly left open a return to federal court once Mr. Carter has exhausted his state process. Yes, and of course we see that in many forms of civil litigation that have exhaustion requirements. There's the Federal Tort Claims Act, there's the Prison Litigation Reform Act. We have cases under those statutes all the time where the judge says, dismissed for failure to exhaust remedies, and that's appealed and resolved on appeal as a final decision. Now if we've got ourselves all tangled up in the law of collateral attack and departed from the way we would deal with this if this were, say, a Federal Tort Claims Action case, then maybe we need to get untangled. But I don't see how in principle the terminating order in a case could be collateral to anything. Right, your honor, we were taking for granted for purposes of these arguments that the fact that the district judge specifically said you could come back and reopen this case was relevant. Certainly, if it isn't relevant, then there's no obstacle at all to reaching the merits, and we think that the merits in this case are fairly clear. Mr. Gerges, let me let me ask you that question in a slightly different way, okay, that I assume for purposes of the question that Moore and Gaccio do not exist. Okay, what in your view is the right answer to this question as a matter of first impression? To the question of jurisdiction, your honor? Yeah, appellate jurisdiction. Put differently, Moore and Gaccio, as you recognize, they create a box for you that are tough. And so you've briefed this the other way, and I get it that way. But Judge Easterbrook's question, at least as I hear it in part, is getting at what's the right answer to the question as a matter of law? And just set our precedent aside for a minute in answering that. My understanding is that the courts, there's no general rule that a dismissal that is without prejudice is a formal order that's appealable. And that's why I think that the strongest case as the five circuits that have addressed this issue explicitly have held is the collateral order doctrine. And we think that for the reasons we've discussed and you've alluded to, Moore is not an obstacle to holding that in this case. And the three conditions set by the collateral order doctrine are met here because the dismissal for failure to exhaust resolves a disputed question, which is whether you're excused from exhausting. It's separate from the merits, as Moses H. Cohn took for granted, rightly. And as I don't understand the state to be ultimately challenging, they seem to focus on the third condition, which is that it's effectively unreviewable on appeal from a final judgment. That it can be reviewed on appeal from a final judgment. But we think that's a mistake because in order to get to a final judgment, you have to by that point, whether it was fair to require you to convince it is a moot issue. Wisconsin seems to, although Moore overlooked this mootness issue, Wisconsin seems to grant that Moore was wrong to do that because it takes a different tack for attacking the third condition. In this case, it says that, well, if the court was wrong to force you to exhaust, then when you come back from state court, you can argue to the federal court that it shouldn't give the state court's AEDPA deference. But that rationale seems to fly in the face of the text of AEDPA. No petitioner has ever made or succeeded in making that argument. And the Seventh Circuit has said, if you have a mere hypothetical possibility of review on appeal from a final judgment, then you're not effectively reviewable on appeal from a final judgment. So as those other circuits have held a third, fifth, eighth, and tenth, and now the fourth as well, we think that the collateral order doctrine provides a clear basis for jurisdiction here. And again, on the merits of the claim, it's equally clear that Mr. Carter is excused from exhausting. There are two questions under dozy and low, whether the delay was inordinate and whether it was unjustifiable. On the inordinacy question, the district court held that it was inordinate and the state at this made clear the focus of the question is whether the delay is attributable to the state. And in this case, it is because as Lane held, delay is attributable to the state if it's caused by counsel in a proceeding where you have a right to counsel. And that's what we have here. The state doesn't deny that counsel is primarily responsible. And it also doesn't deny that the main reason was effectively an overloaded docket for the public defender's office. And even if you thought that was relevant, exactly why the delay was caused by the state. There are several cases making clear that over overloaded dockets or understaffing are per se insufficient reasons to justify a delay. So if it's unjustifiable as the district court never denied, and it's inordinate as everyone agrees, then Mr. Carter is excused from having to exhaust. Mr. Gerges, let me ask you there's an added complexity to an already complex case that's popped up in the sense that Wisconsin is now moving along, or I don't know if they're moving along, but the bookmark has been lifted. I think we can say that. Okay. What, if any, significance does that have here? Would you just say, well, they can do whatever they want. He's entitled to federal review. Yes, your honor. I think that as the court held in Verdon, exhaustion or excuse from exhaustion and the exhaustion requirement in general is a threshold issue to be determined at the time of filing. And I think there are good formal and pragmatic reasons that have been recognized by several courts of appeals. So as a formal matter, as the sixth circuit said in Bagley, the error presented to this court is the district court's error, which should have considered the facts as they stood at the time of the appeal. That it was considering the case at a pragmatic or practical level. You don't want to reward foot dragging or gamesmanship by the state courts or allow them to drag their feet until they're forced by the filing of a federal petition. And even the cases that the state sites as allowing the exhaustion requirements to be revived, just because there's some resumption in state court are pretty clearly distinguishable. All of them leave open the fact that a delay for long enough might be too much. The Walker court said that it's assuming. And could you tell me exactly the status of the litigation in state court? So since, so after it was not actually until after Mr. Carter filed for an appeal from his denial of his federal habeas claim that the state began, that the state process began to move. At exactly the status. Has his brief been filed, for example? So that, so there are two stages to the direct review process in Wisconsin. We're still, we're at the end of the brief. Yes, I'm sorry. I didn't hear. Yes, the, his, his brief has been filed. The state has filed its opposition and his reply has been filed. There's a hearing set for June 23rd. Is that the appeal hearing or the appeal or the hearing in the trial court? It's the hearing of the trial court. Would you perhaps file a rule 28 letter with full details about exactly the status of the proceedings in state court? I think that would help us. Yes. You don't want to be together. We can decide as you suggest that it's irrelevant, but we do want to know what it is we're saying is irrelevant. We're not. Absolutely. And even if it's relevant at all, what happens post filing, I think that the fact that we're still in stage one of two stages of the direct review process here will be certainly relevant. And as the 10th circuit said in champion, it's certainly also relevant how much harm is in view for the petitioner. And in this case, if Mr. Carter won't be able to get the full relief that he's seeking, even if he prevails on his claims, uh, if the, uh, trial court in Wisconsin, isn't able to resentence him by next February, which is when he says that if his plea deal was honored, he would be released. And that's certainly going to be relevant to whether he's how much prejudice and risk of prejudice there is to him in forcing him to, to continue to try to exhaust. It's also going to be relevant. I think that even after the state process got moving only after he filed for an appeal from his federal habeas claim, the state appointed council filed another motion to extend the state file, two motions to extend his council was replaced twice. Uh, and so there's, um, every, they certainly haven't given us reason to think it's going to be expedited from here on out. So Mr. Gergis, does that mean that the current council is Mr. Fregoso? No, your honor. I believe the current council, I forget the council's name, but Mr. Fregoso, I believe also, uh, withdrew from the case and has been replaced, I believe last month. So from the perspective of the Wisconsin court of appeals, if the hearing is to take place in the Milwaukee County circuit court on June 23rd, the Wisconsin court of appeals is going to have to extend again, the deadline for deciding the post-conviction motion. Cause currently that deadline is set as June 15th. That's right, your honor. Wisconsin. Okay. Thank you. That's right. And I think all of these indicate that, um, this isn't moving with all deliberate speed where we've got a long road ahead. However, you cut it in whatever assumptions, even if you assume that's not a phrase you want to use, it comes from round two. And it means there are no further questions. I'd like to reserve the balance of my time. Thank you, Mr. Kyrgios. Mr. O'Brien. May it please the court. One thing that must be made clear at the outset is Mr. Carter's ultimate objective is to be able to pursue parallel litigation in state and federal court. No, his ultimate objective is to be released sooner rather than later. That's correct. And that's whatever he thinks he needs to get that sentence. He is facing a nine-year sentence. He is facing a 16-year sentence. He was sentenced in July of 2017 under the state's bifurcated sentence program to 19 years or six, 16 years, consisting of nine years of initial confinement followed by seven years of extended supervision, which keeps him under state control until 2033. Understood. And Mr. O'Brien, the challenge, this is Judge Brennan and Mr. O'Brien, the challenge, the urgency here seems to be the function of the number of adjournments granted by the Wisconsin Court of Appeals, 12 such adjournments. And understandably, some transcripts had to be created. However, we're now at the position where, as Mr. Kyrgios argues, February 2022 would be the expiration of the initial term of confinement if the plea agreement had been followed. And although we don't have the merits in front of us, when we review then Assistant U.S. Attorney, now Judge Crivello's comments about the plea bargain, and then we read Judge Protasiewicz's comments when she sentences Mr. Carter to be on the plea bargain, that there's a colorable Santabello issue here. And this is where the urgency comes in from the court, is that we may be in a position where rights are not being effectuated. Now, we've got the countervailing argument of we don't want state and federal litigation occurring at the same time, but can you speak to this urgency point that Mr. Carter's arguing? Well, and I think one thing that needs to be clarified, first of all, the ultimate issue here under 2254b1b is whether the state process is absent or if not absent, whether it's ineffective. And Judge Peterson reasonably held that Mr. Carter failed to show that it was either absent or ineffective for the very simple reason that he never brought this to the attention of the state courts. All the state courts knew is that his attorney was asking for extensions to get transcripts to investigate further, and for all the state court knew, that was a justifiable reason. He had to show, after all, good cause for these extensions under Wisconsin law. Mr. O'Brien, I read the state court decision, I'm sorry, the district court decision a little bit different than that. I must say, I read it as at odds with itself. I read it as effectively saying, these are my words, not Judge Peterson's, but this is what I read it as effectively saying. Mr. Carter has persuaded me that the terms and conditions that I am, nonetheless, asking him to give it one last shot in state court by writing letters, you know, etc. That seems at odds with itself. And the reason I say that is because when that provision in 2254 is satisfied, Congress has directed consideration of the application. Why is that analysis incorrect? I think a reasonable reading of his decision is, and he did find that the two-year delay was inordinate. And I think that, so he was satisfied that the delay was too long. And I think by the way he ruled in that, not only did he ask Mr. Carter to go back, but that he sent copies of his decision to both the Wisconsin Court of Appeals as well as to his, Mr. Carter's trial. Let me ask you the question this way. What, suppose that this court deems the finding that he made to satisfy the condition in 2254B1B2, assume that for purposes of the question. What's the legal consequence or lack thereof? Well, I, you know, I get, I, don't change the facts, answer the hypothetical. Well, the legal consequence of assuming that he found that the process was both absent and ineffective, then I suppose he would order a merits review, but I really don't believe that's what he's doing. I think in essence, he was saying, you haven't proven to me that the process is ineffective. He'd simply, for the simple reason that he never brought anyone. Okay, so that's your position. We've got to, we've got to make a call on that. We hear your, I hear your argument, but if we interpret it contrary to what you're advocating, then Mr., you agree Mr. Carter is entitled to have his application considered in the district court? I, I can't agree with that because I just think it's unfair to the state courts when this was never brought to any state court's attention until Judge Peterson sent Congress. Well, then you're disagreeing with what Congress has included in the statute. I mean, Congress has accounted, they envisioned this, this circumstance could pop up. I mean, how else do you explain the existence of the provision? And, and anytime it's satisfied, you could say, well, you know, habeas has a lot to do with federalism and go give it a shot in the state court and we don't want to be heavy handed. He'd be acting contrary to the statute. Well, I, you know, again, I, I, I, I, my interpretation of his I don't believe that he went to the second step as this court's decision in Jackson v. Duckworth requires of also holding that the delay was unjustified because for the very reason that he never brought it to the state court's attention and for all the state courts knew the delays requested by his attorney were justified. Where is this unjustified business coming from? 2254 B1B Romanet 2 reads circumstances exist that render such process ineffective to protect the rights of the applicant. There's nothing I can see there about whether the delay is unjustified. Question is whether the process, the state process is working or not. And the contention here is the state has taken so long that the sentence as Carter contends is the right sentence that will expand, will expire before the state gets around to rendering a decision. And that sounds like it meets the statutory standards. Well, again, I, the district judge specifically read out, relied on this court's decision in Jackson v. Duckworth, which hold, which applies 2254 B1 and specifies that the showing has to be both in an ordinate and justified unjustifiable delay. So you think if there's a conflict between a statute and a judicial decision that the judicial decision prevails? Well, I think many of us are inclined to think that when Congress legislates, our job is to carry that out. And yet I, Jackson v. Duckworth was decided post-AEDPA and applied 2254 B1. So, um, well, even if we accept it, okay, your, your adversary has invoked the lane decision and offered a response that, and the response is that Mr. Carter himself is not responsible for the delay. How could he be? But then how can the, how can the state courts be held, be unjustifiably delaying proceedings when they're unaware of a problem? Uh, they're totally, one might think it is a state appellate judge's job to be aware of a case that is loitered on the docket for more than three years. This court actively reviews cases that are on our docket. And I will tell you counsel that we have disbarred lawyers who have failed to file a brief within two years of the notice of appeal. We've thrown them out of the bar spontaneously, but the state appellate court in this case for three years plus did nothing whatsoever. Well, you know, again, he, it was relying on the reasons provided by counsel and it, you know, he, under state law. What's your response to Mr. Gerges' point? His point is that, yes, that's factually accurate as a descriptive matter. It's not legally, the delay is not attributable to the defendant. You, you can't avoid the, the legal aspect of this by just, just continuing to return to the facts because legal principles guide, you know, our judgment of how the facts apply to the law. Right. But, but under the statutory standard, the process has to be absent or ineffective. And I just don't understand how we can hold the state courts to, to find that they, their process was absent or ineffective when they were unaware that there was a problem. You're simply assuming that it's okay for a state appellate court to be sound asleep on the job, for a notice of appeal to be filed and no judge gives a fig. No one tries to monitor what's going on. No judge asked the staff to monitor the progress of appeals in this court are actively monitored to prevent them from languishing on the docket. Your position is Wisconsin doesn't need to do that and can still claim that it's immune from federal collateral review. That seems to be your position. Am I wrong? Yes, you're wrong. The Wisconsin Court of Appeals often takes hold of these cases. They often issue orders saying, you know, this is, you've had multiple extensions. Did Mr. Carter file a notice of appeal? Or the, or the state law equivalent? He filed, he got the process rolling when he filed a notice of intent to pursue post-conviction relief. Right. And so Judge Easterbrook's observation is, well, how can that just sit there? You know, in, presumably indefinitely. So take, Mr. O'Brien, would there be any point at which you would, you would acknowledge under the ineffective language of the statute that it ain't working? So let's take three years and make it 13 years. Well, no, I would hope at some point either the attorney's going to withdraw because he can't handle the case or the client's going to write, oppose one of his extension motions, write a letter to the court saying, I'm tired of this. I want a new lawyer or the court of appeals will step in at some point. You know, one thing about Wisconsin process and his claims here are ineffective assistance and that requires things like evidentiary hearings and investigations and interviewing witnesses and getting the case filed. Three years is a long time for a director appeal, a director appeal, a direct appeal to be asleep. That's a long time. And that's. I don't think there has been a single criminal direct criminal appeal in the seventh circuit in my time, which is now past 36 years that has taken two years to be briefed. I would be stunned if there were a single criminal appeal that had taken a year and a half to be briefed. But this criminal appeal, when three years had gone, we hadn't had the opening brief. Well, again, we're, we're in the state post-conviction process, so we're not even at the appeal level, but we are at the process down. Yes, you are. A notice of appeal was filed. This case was in the court of appeals where it went sound asleep, where nothing happened. Well, it wasn't a notice of appeal. Again, it was a notice of intent to pursue post-conviction relief, which is what he's doing now by litigating it in the trial court. I mean, it just seems linguistic. I mean, you're just having an evidentiary hearing on its ineffective assistance claim in June with new attorney, uh, with his complaint. Have you gone to the Supreme Court of Wisconsin and said, look, there's a serious problem. If this case is anything remotely representative of what's happening, there's a serious problem. It needs to be fixed and fixed now. Has the attorney general gone to the state's administer, you know, the administrative side of the state Supreme Court and asked for a fix? In this particular case? No, as a rule, if this can happen, there's a serious problem. It needs fixing. Well, I, you know, again, I, in, when litigating appeals, attorneys, I take it the answer is no. often ask. I wish you'd answer my question. I asked if the attorney general had gone to the state judiciary and said, we've got a problem, please fix it. I take it the answer is no. No, we don't have a problem. We don't have a problem. Because we have deadlines. You are, you are arguing this case and saying you don't have a problem. I find that shocking. Because attorneys often, defense attorneys often ask for extensions and get them for a variety of reasons. Counsel, counsel, I hope you're hearing me. If you are saying that this case does not illustrate a problem, then the attorney general's office itself has a very serious problem. You're in denial. Well, it illustrates a problem. You're not going to like our opinion in this case. It, it, it still, it illustrates a problem between a client and his defense attorney that needs to be brought to the attention of the court as soon as possible. That I agree. Curtis. I see my time is up. Thank you, Mr. O'Brien. Anything further, Mr. Curtis? Yes, Your Honor, just on jurisdiction. The court's decisions in Warren Gatcho, of course, dismissed for lack of jurisdiction and thus lack of finality. But I do think on reflection, if the court doesn't feel bound by those, it could treat this order as final under the formulation. We feel bound by our decisions unless they are modified or overruled. But Circuit Rule 40E gives us a means to modify or overrule them. Until then, we are bound by them. That's right, Your Honor. And for the reasons we laid out in our brief, we think that more is not precedential. It didn't abide by that rule, both because it created a circuit split and because it reversed this court's 58 onward. We can't just ignore cases. The case may be wrong. It may have failed to follow the Rule 40E process, but that's not a ground for ignoring it. That's a proposal just to be chaotic and not have any circuit law, but we will do it properly rather than just by designating decisions that we don't like and propose to ignore. Yes, Your Honor, I guess it's a question of how to draw the line of best fit. And a year before Moore, this court in Hill v. Potter said that the test for finality is not whether the suit is dismissed, whether without prejudice or on the merits or jurisdictional grounds or procedural. The test is whether the district court has finished with the case. No published decision applies to this rule to hold a dismissal for lack of exhaustion as final, but the Fourth Circuit in Clark v. Clark, which we cite in our brief, did do so. Whether on that ground or the collateral order doctrine that has been embraced by several of the court's sister circuits or indeed the Moses H. Cone doctrine, jurisdiction is available here, and once you get there, the merits are clear. Mr. Gerges, I'd like your thoughts on, there's both a practical and a practical issue is if the Milwaukee County Circuit Court's not going to make that initial decision for at least another couple months, and then there's the possibility of appellate review, we could get beyond that February 22 deadline if the original P agreement had been enforced. There's also a theoretical problem, though, of contemporaneous federal and state court litigation. How do we deal with the latter? Yes, Your Honor. Well, the first point is that I think that risk of contemporaneous litigation is at least possible in other cases, even where the state process hasn't resumed by the time that you're in federal or appellate habeas proceedings as here, because you could say, well, the petitioner is excused from exhausting, and then while the federal habeas proceeding is going on, the state court could resume. So I think in practice, at a practical level, what you have to do is look at what's likely to happen, and in this case, given the history of the delay and the long road ahead, I think it's fair for the federal proceeding to continue. The risk of contemporaneous proceedings has to be balanced, first of all, again, against the harm to the petitioner, as you point out, but also if you're worried about contemporaneous proceedings, one thing you might be worried about is a race to judgment and the procedural differences that would arise from that, and on that front, I think it's reasonable to look to how likely it is that the state process will happen apace and happen first. I think that's quite unlikely in this case. As several circuits have said at some point, the federal courts have to be able to say enough is enough, and I think we've reached that point here. Thank you. Thank you, counsel, and Mr. Gerges, we appreciate your willingness and that of your law firm to accept the appointment in this case, and your assistance to the court as well as your client. The case is taken under advisement.